McGREGOR *v.* McGREGOR'S ESTATE.

1. ESTATES OF DECEDENTS—ALLOWANCE OF CLAIMS—EVIDENCE—
SUFFICIENCY.

A son presented a claim against the estate of his mother for
moneys lent to, and paid out for, her. There was oral testi-
mony tending to prove a loan of $450 in August, 1889, and of
various other sums during the years from 1898 to and includ-
ing 1906. He also produced a writing, dated in November,
1904, executed by his mother, admitting a loan of $450 to pay a
mortgage "on my property," in August, 1889, $50 to pay taxes,
in August, 1904, and concluding, "It is my request that
these debts and all other money he has given me from time
to time be paid out of my property after my death." *Held,*
there being no testimony tending to disprove the making of
the loans as alleged, and none tending to prove that the writ-
ing was not intelligently and freely executed, that a verdict
for claimant was properly directed.

2. SAME.

Evidence that claimant's father, who died in August, 1889,
paid and discharged, in November, 1888, a real estate mort-
gage upon premises on which his fishery was located had no
tendency to prove that the alleged loan of $450 by the son to
his mother was in fact a loan to the father, and was rightly
excluded.

3. SAME.

Evidence examined, and *held*, that in that received and that ex-
cluded there is none tending to prove that the writing in
question was not intelligently executed by the deceased.

Error to Saginaw; Gage (William G.), J.   Submitted
April 6, 1909.   (Docket No. 12.)   Decided April 30, 1909.

James McGregor presents a claim against the estate of
Elizabeth McGregor, deceased, for money loaned during
her lifetime.   The claim was allowed in part by the com-
missioners, and the executor appealed to the circuit court.
There was judgment for claimant on a verdict directed
by the court, and contestant brings error.   Affirmed.

*F. E. Emerick,* for appellant.

*William E. Crane,* for appellee.

Ostrander, J.   James McGregor presented a claim against the estate of his mother, Elizabeth McGregor, who died June 8, 1906.   The executor of her estate appealed from the allowance of a portion of the demand to the circuit court.   An item of the demand presented is, "August, 1887, to money loaned to release mortgage on property at Pt. Lookout—$450," with interest for 19½ years at 6 per cent. per annum.   The testimony tended to prove a loan of money in the year 1889, instead of in the year 1887.   Claimant waived any allowance for interest.   The verdict, directed by the court, included the amount of the alleged loan.   Claimant introduced in evidence a writing, of which the following is a copy:

"Cheboygan, November 4th, 1904.

" I hereby acknowledge that I owe my son, James McGregor, four hundred and fifty dollars, which he loaned me in August, 1889, to release the mortgage on my property, the fishery, at Point Lookout; also fifty dollars loaned me in August, 1904, to pay the taxes on my property.   It is my request that these debts and all other money he has given me from time to time be paid out of my property after my death.

                              her
            "Elizabeth (X) McGregor.
                              mark

"In presence of
            "Maude McGregor.

"Subscribed and sworn to before me November 4th, 1904.

                        "Edward Bouchard,
                              "Notary Public."

There was testimony tending to prove the execution of this writing by the deceased on the day it bears date. The appellant (executor) claims that it was error for the court below to direct a verdict because:

(1) There was testimony which raised a question of

fact concerning the intelligent execution by deceased of the said paper writing.

(2) Testimony was improperly excluded which tended to prove that she did not intelligently execute the writing.

It appears to be conceded that the paper was executed by deceased on the date it bears, and that it was produced by claimant. It is further conceded that, if it was fairly and intelligently executed, it is evidence of a continuing contract sufficient to answer the provisions of 3 Comp. Laws, § 9740. It is not certified that the bill of exceptions contains all, or the substance of all, of the testimony produced at the trial. This court has not had the benefit of an oral argument of the cause. In each of the briefs filed are eight printed pages, under the head "Statement," largely devoted to argument. In the brief for appellee but a single correction is made to the statement found in the brief for appellant; yet it is clear that the two statements cannot refer to a single state of facts. We have therefore at some pains examined the record.

Some testimony was introduced which it is claimed tended to prove that no such sum of money was lent by claimant to his mother in 1889 or at any time. Attention will first be given to this subject. It appears that her husband, claimant's father, died in August, 1889. Testimony for claimant tended to prove that in a few days creditors appeared at Point Lookout, where he had a fishery, and sought to take possession of the fishing outfit; that it was on this occasion that application was made to the claimant for aid which was furnished by him. Thereafter the widow and her daughter managed the fishery business, and it was sold by the widow, seven or eight years later, for $1,500. The real estate connected with the fishery was purchased by James McGregor, Sr., in 1888. It was mortgaged for $500, and the mortgage was paid and discharged November 14, 1888. The record of the mortgage and of its payment and discharge was offerred in evidence upon the theory that, if claimant lent money, it was to his father and to pay this debt. The court

excluded it, and we sustain the ruling. There is nothing but the proximity of the event to the date of the alleged loan to connect the transactions in any way.

It appears, also, that the deceased owned a cottage at Point Lookout and sold it for $400. She owned, also, some houses, which she rented. After the death of the father, the children released to her their interests in the estate. From 1895 to the time of her death she carried balances of cash in bank of from $300 to $850. She was a much respected woman, with a reputation for paying her debts promptly. But it also appears, and checks for the money were produced in evidence, that in 1898, 1899, 1901, 1902, 1903, 1904, and 1906 claimant paid, or gave to her, or lent her, money in sums varying from $8.50 to $50. It is not proved that she ever repaid any of these sums. They are included in the demand presented by claimant. We find nothing in these facts to show invalidity of the writing relied upon, or to dispute the fact of the original loan.

It further appeared that Elizabeth McGregor was 74 years old when she died, that she had for some time been afflicted with a serious affection of the kidneys, and in various ways exhibited the infirmities attending on old age. In many respects the position of the executor is like the one assumed by contestants in *Hibbard* v. *Baker*, 141 Mich. 124; it being claimed in that case, as it is in this one, that the decedent, at the time the instrument in question was executed, was suffering from senile dementia. We said in the opinion in that case, and it may be repeated as applicable here, that:

"If decedent was afflicted as it is claimed he was, no test can well be applied to determine lucidity and disposing power at any particular time or during any particular interval. It may well be said * * * that, if decedent was competent to make the disposition of his property which he did make, no separate question of undue influence is involved."

Counsel for the executor made the following offer of proof:

"We intend to prove that from 1901 on, Mrs. McGregor, she then being past 70—she was 74 when this paper was signed—that she became in 1901 subject to physical breakdown; that she was the victim at that time of chronic, permanent, and incurable organic disease, which affected her health and mind, and which led to senility; that that condition of things continued through 1901, 1902, 1903, and 1904, including the time this paper was made, and up to the time of her death. I offer that as a foundation. Then I expect to call other witnesses to prove that the old lady herself had referred to something that she called—that they had induced her to sign—that she didn't know what it was."

It appears that the executor who is contesting the allowance of this demand is also a son of Elizabeth McGregor. It is disclosed by the record that counsel and the trial court assumed, in various statements which were made in the presence of the jury, that in the month of May following the alleged execution of the writing here in question, Elizabeth McGregor executed her last will and testament, that it was duly probated, and her mental capacity to make the will was not questioned. In the state of the record, we assume these facts to have been established or admitted at the trial. Before the offer was made, two physicians had been called as witnesses and examined on the part of the estate. One of them had treated the deceased in the years 1905 and 1906, and he stated he did not know her physical or mental condition in 1904. It was while he was upon the witness stand that the offer to prove was made. The other physician had treated Mrs. McGregor professionally for several years. He testified that she was suffering from senility.

"I believe she had a mental weakness common in people of her age; but not perhaps what you would call insanity. In other words, she was perfectly rational at times and perfectly irrational at other times. She had what I should consider queer notions, delusions possibly, but they were not present all the time."

He also testified about her general health, and that the

infirm mental condition was more noticeable as she approached the end of life. Testimony of a nonexpert, a neighbor, was to the effect that Mrs. McGregor was sometimes "a little off, other times she was not. * * * She was all right in her mind, but once in a while she would talk like that. Sometimes she would be all right and the next time she didn't know much."

Many objections were made and several rulings; the substance of the rulings being that until some testimony had been introduced tending to prove that the paper writing had been procured by undue influence no further testimony concerning her general health and mental condition would be received. We ought not to, and do not, assume that, in his offer to prove, counsel used the word "*senility*" as meaning "*imbecility*," a meaning sometimes given to it. Appellant appears in court in the right and character of an executor of a will made many months after the writing in question was executed. Such testimony as was received does not tend to prove permanent or continuing mental infirmity; quite the opposite. The offer, then, at best, is one to prove what had already been proved, viz., that this woman had periods during which there was apparent an impairment of normal mental powers resulting from disease and advancing years. Such delusions as she is supposed to have had were harmless and related in no manner to her business affairs. The rulings, in effect, required some testimony directed to the time and act of executing the writing and to her condition at that time. If she was then mentally competent, it does not appear, and it is not claimed, that she was unduly influenced. No witness intimates that she was not at that time mentally competent to do what the writing indicates she did do. On the contrary, the undisputed testimony is that she left her home in Saginaw, traveled alone to and from Cheboygan, remaining a week at Cheboygan. Her ability to transact business before and after November, 1904, is not questioned otherwise than has been stated. Undoubtedly considerable latitude should be given in cases

like this one to efforts to establish the exact relations of the alleged contracting parties. Much time has elapsed since this considerable amount of money is claimed to have been lent by a son to his mother. She could read printed matter, but did not read writing and did not sign her name. Such a demand is generally regarded with some suspicion unless it is fairly established by evidence. But, when supported by testimony fair on its face, mere suspicion that wrong has been committed is not sufficient to make an issue of fact to be decided by a jury. We find no testimony tending to prove that the writing relied upon was not intelligently executed.

The judgment is affirmed.

BLAIR, C. J., and MOORE, McALVAY, and BROOKE, JJ., concurred.